IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| LARGAN PRECISION CO., LTD.,<br><br>         Plaintiff,<br> v.<br><br>ABILITY OPTO-ELECTRONICS TECHNOLOGY CO., LTD., NEWMAX TECHNOLOGY CO., LTD. AND HP INC.,<br><br>         Defendants. | Case No. 4:19-cv-00696-ALM<br><br>JURY TRIAL DEMANDED<br><br>▇▇▇▇▇▇▇▇▇▇▇ |

## HP INC.'S MOTION TO DISQUALIFY COUNSEL

Defendant HP Inc. ("HP") hereby moves the Court for an order disqualifying Adam Allgood and his firm Fisch Sigler LLP ("Fisch Sigler") from representing Plaintiff Largan Precision Co., Ltd. ("Largan") based on Mr. Allgood's extensive prior representation of HP while an attorney with Morgan, Lewis & Bockius LLP ("Morgan Lewis").

At Morgan Lewis, Mr. Allgood billed nearly 2,000 hours representing HP in four patent litigation matters from February 2015 to September 2017. As an indispensable member of HP's legal team, HP entrusted Mr. Allgood with its most safeguarded confidences, including legal strategy, supplier relationships, internal procedures and decision-making in patent cases involving the same products accused here by Largan. Mr. Allgood's representation of Largan adverse to HP violates the ethical duties of confidentiality and loyalty he owes to HP under the Local Rules of this district, Texas Disciplinary Rules of Professional Conduct, ABA Model Rules of Professional Conduct and Fifth Circuit precedent. Because this case is substantially related to Mr. Allgood's prior representation of HP, there is an irrebuttable presumption that Mr. Allgood—and Fisch Sigler—will use HP's confidential information to its detriment, mandating their disqualification.

HP therefore respectfully requests that the Court disqualify Mr. Allgood and Fisch Sigler from representing Largan due to their ethical conflicts.

I.      **Factual Background**

The complaint identified four attorneys of Fisch Sigler as counsel for Largan, including Adam A. Allgood. *See* Dkt. #1 at 26. Mr. Allgood was admitted to the State Bar of Texas (Bar No. 24059403) on November 2, 2007 and is admitted to this district. Mr. Allgood entered his appearance in this case on September 25, 2019. *See* Dkt. #5.

Prior to joining Fisch Sigler, Mr. Allgood was an attorney with Morgan Lewis. *See* Declaration of Tony Baca ("Baca Decl.") at ¶ 5. Mr. Allgood represented Hewlett-Packard Company (Hewlett-Packard) and later HP in four patent litigation matters. *Id*. Hewlett-Packard Company split into two separate publicly traded companies, HP Inc. and Hewlett Packard Enterprise Company, on November 2, 2015. *Id*. at ¶ 4. The personal computer and printing business units of Hewlett-Packard remained with HP Inc. *Id*. Mr. Allgood represented Hewlett-Packard from February 2015 until the split and represented HP Inc. from the time of the split until September 2017. *Id*. at ¶ 5.

While at Morgan Lewis, Mr. Allgood worked closely with Tony Baca, a senior litigation manager who has been employed by HP for 26 years, on three of the four HP matters. *Id*. at ¶¶ 4, 5. The first case in which Mr. Allgood represented HP was a Section 337 investigation before the U.S. International Trade Commission ("ITC"), Investigation No. 337-TA-949 ("949 Investigation"), in which Hewlett-Packard was named as a Respondent. *Id*. at ¶¶ 6-7. The Complainant, Andrea Electronics Corp. ("Andrea"), filed its complaint with the ITC on February 9, 2015. *See id*. Andrea accused HP's "desktops, laptops, all-in-ones, Chromebooks, and computer tablets containing audio processing hardware and software" of infringing the patents-

2

in-suit. *Id.* at ¶ 7, Ex. A at ¶ 113. Morgan Lewis filed its Notice of Appearance of Counsel in the 949 Investigation on March 13, 2015, which identified Mr. Allgood. *See id*. at ¶ 8; Ex. B at 1. Mr. Allgood billed 983 hours during his representation of HP in the 949 Investigation from February 2015 to September 2017. *Id.* at ¶ 9. Mr. Baca worked closely with Mr. Allgood and relied heavily on him given the restrictions on disclosure of Confidential Business Information (CBI) in the ITC protective order. *See id.* at ¶ 10. Mr. Allgood was the lead attorney for claim construction and supported fact discovery. *See id*. at ¶¶ 11, 12. He was also involved in negotiating the complicated settlement agreement with Andrea. *See id*. at ¶ 13. One of the other Respondents in the 949 Investigation, ▇▇▇▇▇▇▇▇▇▇▇▇. ("▇▇▇▇"), was a supplier to HP for the accused technology. *See id*. ▇▇▇▇ settled with Andrea but HP continued to litigate because it had other accused suppliers. *See id*. Mr. Allgood became intimately aware of HP's relationships with suppliers ▇▇▇▇ and ▇▇▇▇▇▇▇▇▇▇. as he assisted HP with supplier issues such as indemnification and intellectual property warranties and was exposed to information about HP's supply chain and procurement. *See id*. at ¶¶ 14, 15. After HP settled with Andrea, Mr. Allgood handled a trial subpoena from Andrea for HP employee ▇▇▇▇▇▇, a member of the notebook R&D engineering group. *See id.* at ¶ 16. He was also Mr. Baca's primary contact at Morgan Lewis for billing and invoicing issues. *See id*. at ¶ 17.

Mr. Allgood also represented HP in responding to a subpoena from Ericsson in another ITC investigation 337-TA-952 ("952 Investigation"), starting in April 2015. *See id*. at ¶ 18. The 952 Investigation covered different electronic technologies used in HP personal computers, including implementing radio transceivers on an integrated circuit; transmitting and receiving wireless signals; display options on mobile devices; and battery-charging techniques. *See id*. at ¶ 19. Morgan Lewis filed a Limited Notice of Appearance in the 952 Investigation on April 22,

2015, which included Mr. Allgood. *See id*. at ¶ 20; Ex. C at 1. The subpoena to HP was very broad, seeing documents and deposition testimony relating to personal computers. *See id*. at ¶ 21. Mr. Baca managed HP's response to the subpoena and worked with Mr. Allgood on that effort. *See id*. Mr. Allgood interacted directly with HP employee ▇▇▇▇ in Finance, learning the types of financial data maintained by HP for notebook computers and the challenges in extracting such data. *See id.* at ¶ 22. Mr. Allgood also interacted directly with HP employees ▇▇▇▇, ▇▇▇▇ and ▇▇▇▇, all in the consumer notebook R&D engineering group. *See id.* at ¶ 23. Mr. Allgood also worked with HP paralegal ▇▇▇▇ to collect documents and information. *See id*. at ¶ 24. He prepared Ms. ▇▇▇▇ for deposition pursuant to the subpoena, defended her deposition and prepared her to testify at the ITC trial. *See id*. at ¶ 25. Mr. Allgood also worked with Mr. Baca to seek and receive reimbursement from the Complainants in the 952 Investigation for responding to the subpoena. *See id*. at ¶ 26. Mr. Allgood billed 177 hours during his representation of HP in the 952 Investigation from April to November 2015. *Id.* at ¶ 27.

Mr. Allgood next represented HP on the *Nexus Display Technologies LLC v. Hewlett-Packard Company* case, C.A. No. 2:15-cv-02402-TJH-JC in the Central District of California ("Nexus Display case"). *See id*. at ¶ 28; Ex. D. Nexus Display Technology ("NDT") accused HP of infringing four patents related to the Display Port in HP laptops, desktops, monitors and displays. *See id*. at ¶ 29. Mr. Allgood billed 750 hours during his representation of HP in the Nexus Display case from May 2015 to October 2016. *Id.* at ¶ 30. Mr. Allgood was Mr. Baca's day-to-day contact in managing the case and was identified as HP's counsel in every filing starting with HP's answer on June 4, 2015. *See id*. at ¶¶ 31, 32; Ex. E at 15. He represented HP's interests with the joint defense group in the case, worked with HP paralegal ▇▇▇▇ on

4

discovery and interacted directly with HP employees ▇▇▇▇▇▇ (commercial notebook business), ▇▇▇▇ (workstation engineering), and ▇▇▇▇▇ (marketing). *See id*. at ¶¶ 33-35. Mr. Allgood was integrally involved with HP's strategy and defenses, including reviewing infringement contentions, handling claim construction and HP's technology tutorial, and working directly with HP's non-infringement and damages experts. *See id*. at ¶ 36. Mr. Allgood also worked with Mr. Baca on settlement approaches and in dealing with HP's primary supplier, ▇▇▇▇. *See id*. at ¶ 37. He was the primary contact for billing and invoicing issues on the case. *See id*. at ¶ 38. NDT eventually dismissed the case after the parties settled. *See id.* at ¶ 39.

The fourth case in which Mr. Allgood represented HP was *Raster Printing Innovations, LLC v. Hewlett-Packard Company,* C.A. No. 1:15-cv-03967 in the Northern District of Illinois ("Raster Printing case"). *See id*. at ¶ 40. In that matter, Mr. Allgood billed only 18 hours from May 2015 to June 2016. *See id*. at ¶ 41.

Mr. Baca located 689 emails with Mr. Allgood's Morgan Lewis email address in the "to," "from" or "CC" address fields in his HP mailbox covering the time span of the Mr. Allgood's representation of HP. *See id*. at ¶ 42. Mr. Allgood billed HP 1,928 hours for the four patent litigation matters. *See id*.

## II. Legal Standard

The Fifth Circuit has "made clear that 'disqualification cases are governed by state and national ethical standards adopted by the court.'" *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.3d 605, 610 (5th Cir. 1992)). In the Fifth Circuit, when considering disqualification of an attorney, district courts generally rely upon the following: (1) the local rules in the district; (2) American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional

Responsibility; and (4) the state rules of conduct. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001); *Ayus v. Total Renal Care, Inc.*, 48 F. Supp. 2d 714, 714 (S.D. Tex. 1999). Beyond the various rules and codes identified above, "[a] court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)).

In the Eastern District, "the standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court." Eastern District of Texas, Local Rule AT-2. "Therefore, the attorney practicing in this court should be familiar with the duties and obligations imposed upon members of this bar by the Texas Disciplinary Rules of Professional Conduct, court decisions, statutes, and the usages customs and practices of this bar." *Id.* Under Fifth Circuit law, a "district court is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it." *Woods v. Covington Cnty. Bank,* 537 F.2d 804, 810 (5th Cir. 1976) (emphasis added); *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742, 744 (5th Cir. 1980). "A motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court." *Musicus,* 621 F.2d at 744.

**III.    Argument**

    **A.    The Court Should Disqualify Adam Allgood as Counsel for Plaintiff**

In the Fifth Circuit, "[a] party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship

6

between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines*, 972 F.2d at 614. As the party seeking disqualification, HP bears the burden of proving that the present and prior representations are substantially related. *See id.*

This case is substantially related to Mr. Allgood's prior representation of HP under either the Texas Disciplinary Rules of Professional Conduct or the ABA Model Rules of Professional Conduct. Texas Disciplinary Rule of Professional Conduct 1.09 provides that:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>   (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
>   (2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
>   (3) if it is the same or a substantially related matter.
>
> (b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).
>
> (c) When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph (a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, reprinted in TEX. GOV'T CODE ANN., title 2, subtitle G, app. A, art. 10, § 9 (Vernon 2005). Similarly, ABA Model Rule 1.9 provides that:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
>> (1) whose interests are materially adverse to that person; and
>>
>> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>>
>> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

MODEL RULES OF PROF'L CONDUCT R. 1.9 (2019). Courts have found that while these rules use different language, they do not differ materially. *See, e.g., In re Am. Airlines*, 972 F.2d at 609; *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 301 (5th Cir. 2009).

The first prong of the test, whether HP (and its predecessor, Hewlett-Packard Company) had an actual attorney-client relationship, is indisputable. Thus, the only question is whether this case is "substantially related" to the cases in which Mr. Allgood represented HP. "In determining whether a substantial relationship exists, the Court must examine the issues that arose in the previous representation and the issues likely to arise in the current one." *Biax Corp. v. Fujitsu Computer Sys. Corp.,* 2007 WL 1466638, at *4 (E.D. Tex., May 16, 2007). Some relevant factors include "(1) the factual similarities between the current and former representations, (2)

the similarities between the legal questions posed, and (3) the nature and extent of the attorney's involvement with the former representation." *Id*. at *4-5.

As a starting point, this case and the four matters in which Mr. Allgood represented HP are all patent infringement litigations. *See* Baca Decl. at ¶ 5. HP was a defendant accused of patent infringement in two of the three of the cases Mr. Allgood handled (the 949 Investigation and Nexus Display case), as here. *See id*. at ¶¶ 6, 7, 28, 29. In these two cases, which account for 1,733 hours (90%) of the total hours billed to HP, Mr. Allgood was involved in case strategy, claim construction, fact and expert discovery, billing and invoicing, and settlement issues. *See id*. at ¶¶ 10-16, 31-17. In the instant case, Largan accuses the same types of products that were accused in the 949 Investigation and the Nexus Display case – laptop computers and Chromebooks. *See id.* at ¶¶ 7, 29. And just as in the cases Mr. Allgood handled for HP, Largan accuses a third-party supplier's component—in this case a lens system—incorporated in the accused HP computers. *See* Dkt. 1 at ¶¶ 27-30, 45, 55, 65, 75. Here, Largan bases its infringement allegation against HP on its incorporation of lens systems from co-defendants Ability Opto-Electronics Technology Co., Ltd. and Newmax Technology Co., Ltd., implicating duties of indemnification, defense and intellectual property warranty owed by these suppliers to HP. *See id.* The present case is just like those in which Mr. Allgood represented HP, in which notebook and Chromebook computers were accused of infringement, the <u>only</u> difference being the actual sub-component that forms the basis of the infringement allegation. The accused HP products are the same, how HP manages the suppliers is the same, how HP's internal teams handle information is the same, how HP manages the supply chain is the same, how HP manages financial records is the same, and HP's marketing and sales are the same. Thus, the 949 Investigation and Nexus Display case are substantially related to this litigation.

Mr. Allgood interacted primarily with HP Senior Litigation Manager Tony Baca on these cases. *See id*. at 5. As an attorney at Morgan Lewis, which handles most of HP's U.S. patent litigation, Mr. Allgood enjoyed unfettered access to HP's legal decision makers and was privy to their strategic thinking on the same subjects that will be at issue in this case, including HP's relationship with component suppliers, procurement and supply chain matters, indemnification and defense of HP by suppliers, intellectual property warranties and settlement considerations. Moreover, through his representation of HP Mr. Allgood gained invaluable knowledge about HP's Personal Systems business unit, which is responsible for the computers accused of infringement in this case, the 949 Investigation and the Nexus Display case. For example, Mr. Allgood interfaced directly with two of three HP litigation paralegals, ▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮, to identify sources of fact discovery and witnesses, collect documents and respond to written discovery. Mr. Allgood therefore possesses intimate knowledge about HP's business, organization and confidences that he is ethically bound to never use against HP. By suing HP to take advantage of his inside knowledge, he has violated his ethical duties to HP.

The extent and nature of Mr. Allgood's representation of HP weighs heavily in favor of disqualification. In the two years and seven months that he represented HP, Mr. Allgood participated in HP's strategic and tactical decision-making process covering every aspect of patent litigation. The 1,928 hours he billed to HP over that time span yields an average of 71 billable hours per month. Accordingly, HP has met its burden to show that this case is substantially related to the patent litigation Mr. Allgood handled for HP. Under Fifth Circuit precedent, this Court must disqualify Mr. Allgood from representing Largan against his former client HP. *See In re Am. Airlines,* 972 F.2d at 614 ("The test is categorical in requiring

disqualification upon the establishment of a substantial relationship between past and current representations.").

### B. The Court Should Disqualify Fisch Sigler Due to Imputed Conflicts

Texas Disciplinary Rule of Professional Conduct 1.09(b) states that "[e]xcept to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a)." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(b). Thus, "[u]nder Texas Rule 1.09(b), the personal conflicts of one attorney are imputed to all other members of a firm." *In re ProEducation,* 587 F.3d at 300.

Accordingly, if the Court disqualifies Mr. Allgood, it must also disqualify the other lawyers of Fisch Sigler from representing Largan against HP.

### IV. Conclusion

For the foregoing reasons, HP respectfully requests that the Court disqualify Adam Allgood and Fisch Sigler LLP as counsel for Largan.

Dated: December 9, 2019                    Respectfully submitted,

/s/ Barry K. Shelton
Barry K. Shelton
State Bar No. 24055029
bshelton@sheltoncoburn.com
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, Texas 78734
Telephone: (512) 263-2165
Facsimile: (512) 263-2166

Melissa Richards Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com

GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

***Counsel for Defendant HP Inc.***

## CERTIFICATE OF CONFERENCE

I certify pursuant to Local Rule CV-7(h) that Mr. Tony Baca, counsel for HP, conferred telephonically on December 3, 2019 with Mr. Adam Allgood, counsel for Plaintiff, regarding this motion and that Plaintiff indicated it opposes the motion.

/s/ Barry K. Shelton
Barry K. Shelton

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being served *via* the Court's CM/ECF system on December 9, 2019 on all counsel of record who consent to electronic service per Local Rule CV-5(a)(3) or, otherwise, as required by local and federal rules.

/s/ Barry K. Shelton
Barry K. Shelton